W. Marvin **RADNEY**, et ux., Appellants,

v.

**CLEAR LAKE FOREST COMMUNITY ASSOCIATION, INC.,** et al.,
Appellees.

No. A14–83–511–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 27, 1984.

Eugene J. Pitman, DeLange, Hudspeth, Pitman & Katz, Houston, for appellants.

David A. Carp, Michael W. McCoy, Winters, Deaton & Briggs, Jack D. Nolan, Law Offices of Jack D. Nolan, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ROBERTSON, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from judgment finding a violation of a deed restriction, granting a mandatory injunction and awarding attorneys fees. Appellants raise fifty-one points of error arguing that: the restrictive covenant in question was ambiguous; appellee, Clear Lake Forest Community Association, Inc., was not a proper party to enforce the restrictive covenant; appellees were estopped from enforcing the restriction; the Texas Fraudulent Conveyance statute is not applicable to this case; there was legally and factually insufficient evidence to support the finding that there was a fraudulent conveyance; it is impossible for appellants to perform in conformity with the mandatory injunction; the trial court erred in failing to balance the equities between the parties; there was an improper award of attorneys fees; and Special Issue No. Four contained a comment on the weight of the evidence. We affirm.

Appellants were the owners of a one story home located on Lot 48, Block 4, Section I of Clear Lake Forest Subdivision. In February of 1977, they wished to add a second story above their detached garage. They submitted their plans and request for a building permit to the City of Taylor Lake Village. Allen Heidbreder issued the building permit for the City and returned the plans to appellants. After receiving the building permit and plans, appellants began work on the addition to the garage.

The deed restrictions applicable to Section I of Clear Lake Forest Subdivision contained a specific restriction that:

> No building shall be erected, altered or permitted to remain on any lot other than one detached single-family residential dwelling not to exceed two stories in height, and a private garage for not more than three cars and bona fide servants quarters, which structure shall not exceed the main dwelling in height or number of stories.

Heidbreder notified appellee, Logan Haycraft, Jr., President of the Community Association, that the garage addition was a possible deed restriction violation. Haycraft also received a complaint about the garage construction from a Mr. Hazebriggs. Haycraft testified that he sent a letter in March of 1977 instructing the Radneys to cease the construction because it was in violation of the deed restrictions. Mr. Radney testified that he never received the March 1977 letter. Haycraft never re-

ceived any indication that the letter was returned.

Appellants continued the work on the garage. In June, 1977, the community association sent another letter, by certified mail, to appellants, complaining that the construction of a second story on the garage was in violation of the deed restrictions. Haycraft and Ms. Jane Webb testified that the letter was returned unclaimed to the Association. Radney testified that his wife claimed the letter at the post office.

After the certified letter was returned unclaimed, Ms. Webb went to the Radney home to personally deliver a copy of the letter. Webb was met at the door of the home by Mrs. Radney. Webb was told that Mr. Radney could not talk with her because he was busy working on the roof of the garage. Because Radney continued to work on the garage and failed to make any effort to bring the garage in conformity with the deed restrictions, the community association retained legal counsel. The association's attorney sent additional notice to appellants that the association considered the garage construction to be in violation of the deed restrictions. Appellants continued with and finished the construction. Appellees, Clear Lake Forest Community Association, Inc. and Logan Haycraft Jr., filed suit against appellants seeking to enforce the restriction.

Shortly before the case was called for trial in April, 1982, appellants' counsel informed the appellees' attorney that the property had been sold by the Radneys to Intercontinental Engineering and Management Consultants, S.A. (Intercontinental), a corporation registered in the Caymen Islands. The conveyance was by an unrecorded deed. A continuance was granted. Appellees thereafter amended their petition to include Intercontinental as a party and added a fraudulent conveyance cause of action.

The case proceeded to trial in February, 1983. It was stipulated by counsel for the respective parties that the subject garage exceeds in height or is higher than the main dwelling, that the garage is two stories while the main dwelling is one story, and that the Radneys, at the time of the transfer of the subject property to Intercontinental, were on notice that the association and Haycraft had filed suit to obtain an injunction and recover attorney's fees. In response to Special Issue No. 1, the jury found that the conveyance of the property from the Radneys to Intercontinental was intended to delay or hinder appellees from obtaining an injunction or collecting attorney's fees. The jury found, in response to Special Issue No. 2, that Intercontinental purchased the property with notice of the intent of the Radneys to delay or hinder the appellees from obtaining an injunction or collecting attorney's fees. The jury failed to find that the appellees were estopped from enforcing the restriction at issue. The fourth special issue asked the jury to find the sum of money that should be awarded to appellees "as reasonable attorney's fees, for the services rendered by Plaintiff's attorney in relation to the amount of time expended in asserting a breach of the restrictive covenants or deed restrictions at issue." The jury awarded: six thousand dollars ($6,000) for the legal services rendered prior to March 19, 1982; twenty-nine thousand dollars ($29,000) for the legal services rendered in the preparation of the trial of this cause after March 19, 1982; five thousand dollars ($5,000) for legal services if the case is appealed to the court of appeals and two thousand five hundred dollars ($2,500) for legal services if application for writ of error is made to the supreme court.

The trial court entered judgment that: the restriction in question was valid and enforceable; the addition of a second story to the garage was a violation of the deed restriction which continued after the conveyance to Intercontinental; the conveyance from the Radneys to Intercontinental was declared null and void; the Radneys were ordered to remove the second story from the garage within sixty days of the date of the signing of the judgment; and

attorney's fees were awarded to appellees in accordance with the jury verdict.

In point of error thirty-seven, appellants argue the trial court erred in rendering judgment that the second story of the garage be removed, as the restrictive covenant in question is ambiguous as a matter of law, and should be construed in favor of freer use of the land. We cannot agree that the restriction is ambiguous as a matter of law.

■ The restriction is that:

No building shall be erected, altered or permitted to remain on any lot other than one detached single-family residential dwelling not to exceed two stories in height, and a private garage for not more than three cars and bona fide servants quarters, which structure shall not exceed the main dwelling in height or number of stories.

Appellants argue that this restriction can be reasonably interpreted in two different ways. Appellants concede that the restriction can be interpreted to mean that each lot may be improved with only two structures: 1) one detached single-family residential dwelling not exceeding two stories in height; and 2) a private garage for not more than three cars and bona fide servants quarters, which structure shall not exceed the main dwelling in height or number of stories. However, Appellants believe the restriction can also be interpreted to allow each lot to be improved with *three* structures: 1) one detached single-family residential dwelling not exceeding two stories in height; 2) a three car garage; and 3) bona fide servants quarters, which structure shall not exceed the main dwelling in height or number of stories. Appellants believe that since the restriction can reasonably be construed in two different ways, it is ambiguous as a matter of law and must be construed in favor of freer use of the land. The interpretation that the restriction allows three separate structures on each lot is not a reasonable interpretation. Looking at the wording and punctuation of the specific restriction and all of the deed restrictions, the only reasonable inter-

pretation is that the restriction allows only two structures: 1) a residential dwelling and (2) a private garage with servants quarters, which structure shall not exceed the main dwelling in height or number of stories. Since there is only one reasonable interpretation, the restriction is not ambiguous as a matter of law. Appellants' point of error thirty-seven is overruled.

■ In points of error thirty-eight through forty-three, appellants argue that the Clear Lake Forest Community Association was not a proper party to enforce the restriction or recover attorney's fees. Assuming that the association was not a proper party, an issue we do not decide, any error by the trial court was harmless. Appellants do not challenge the standing of Mr. Haycraft to enforce the restriction. Since Haycraft was a proper party to enforce the restriction and recover attorney's fees, any error by the trial court in allowing the association to remain as a plaintiff in this action was harmless. Tex.R.Civ.P. 434. Appellants' points of error thirty-eight through forty-three are overruled.

In points of error twenty-eight through thirty-three, appellants argue that the appellees were estopped from enforcing the restriction in question. In Special Issue No. 3 the jury was asked if they found the appellees were estopped from enforcing the restriction at issue. The jury's response was "We do not." Appellants argue that the uncontradicted evidence conclusively established that appellees were estopped by their conduct from enforcing the deed restriction in issue. In the alternative, appellants argue that the jury's failure to find that appellees were estopped was so against the great weight and preponderance of the evidence as to require that it be set aside.

The evidence before the jury was conflicting. Mr. Radney testified Heidbreder approved the plans and drawings as meeting the restrictions. There is nothing in the record to show that Heidbreder had any authority to act on behalf of the association. Haycraft testified that Heidbreder telephoned him to inform him that the pro-

posed garage construction by appellants was possibly in violation of the deed restrictions. There is evidence in the record that appellees did not precisely follow the procedure the association had established for dealing with potential deed restriction violations. There is no evidence in the record that appellees made any representation that the proposed construction was in conformity with the deed restrictions. Haycraft testified that a letter was sent to appellants in March, 1977, notifying them that the association had reason to believe that the plans for the improvements to the garage might be in violation of the deed restrictions. Radney testified that he never received that letter. Haycraft testified he mailed the letter personally and received no indication that the letter was returned. Another letter was sent by certified mail to appellants in June, 1977. Mr. Radney testified that his wife picked the letter up at the post office. Haycraft and Webb testified that the letter was returned to the association as unreceived. Webb testified that she went to the Radney home to hand deliver a letter and discuss the violation but she was told by Mrs. Radney that Mr. Radney could not speak with her as he was busy finishing the roof of the garage. Mr. Radney testified that he had already spent a substantial amount of money on the garage addition by the time he received the letter from the association in June, 1977.

Looking at the evidence in support of the jury response to Special Issue No. 3, we are unable to say that appellants established conclusively and as a matter of law that the appellees were estopped from enforcing the deed restrictions. Appellants' argument that the jury's response to Special Issue No. 3 is against the great weight and preponderance of the evidence requires this court to consider and weigh all the evidence in the record and to reverse the judgment only if the verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Southwestern Bell Telephone Co. v. Baker*, 650 S.W.2d 467 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). After reviewing the entire record, we are unable to say that the jury's answer to Special Issue No. 3 was so against the weight of the evidence as to be unjust. Appellants' points of error twenty-eight through thirty-three are overruled.

In a related argument, appellants, in point of error thirty-six, argue that the trial court erred when Defendant's Exhibit No. 5 was excluded from evidence. The exhibit consisted of two pages. The first page was a building permit issued by the Village of Taylor Lake, Texas. The second page was an isometric drawing of the proposed garage construction. On the drawing was a handwritten notation, "Permit issued on basis of deed Restrictions only." Mr. Heidbreder's initials appear after the notation. Appellees objected to the introduction of the exhibit on the basis that the handwritten notation was hearsay. That objection was sustained.

Appellants argue that by allowing Mr. Radney to testify that he received the plans back from Heidbreder approved as meeting the restrictions, appellees have waived any subsequent objection to the admission of the instrument confirming the testimony. *See Boozer v. Stephens*, 509 S.W.2d 910, 913 (Tex.Civ.App.—Tyler 1974, no writ). Appellees respond that the notation on page 2 of the exhibit was hearsay, a timely objection to the exhibit was raised, and that Radney's prior testimony, whether objected to or not, was hearsay which was incompetent and without probative force. *See Texas Co. v. Lee*, 138 Tex. 167, 157 S.W.2d 628 (1941). The failure of appellees to object to the incompetent testimony of Radney did not serve to waive appellees' hearsay objection to the admission of Defendant's Exhibit No. 5. The trial court did not err by excluding the exhibit. Appellants' thirty-sixth point of error is overruled.

Appellants, in points of error one through five, argue that because the disputed property was their homestead, Section 24.02 of the Texas Business and Commerce Code is not applicable to the convey-

ance of the property to Intercontinental. Section 24.02 provides in part:

> (a) A transfer of real ... property ... is void with respect to a creditor, purchaser, or other interested person if the transfer was intended to
>
> (1) Delay or hinder any creditor, purchaser or other interested person from obtaining that to which he is, or may become, entitled;
>
> .    .    .    .    .
>
> (b) The title of a purchaser for value is not void under Subsection (a) of this section unless he purchased with notice of
>
> (1) The intent of his transferor to delay, hinder, or defraud; ....

TEX.BUS. & COMM.CODE ANN. § 24.02 (Vernon 1968).

Appellants argue that § 24.02 has no application to this case because the property was their homestead and the conveyance of exempt property may not be attacked as being in fraud of creditors. *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801 (1956). The rationale for such a rule is that because the law already removes homestead property from the reach of creditors, the conveyance of the property, whether fraudulent or not, deprives the creditors of no right that they had against the property. *See Cox v. Shropshire*, 25 Tex. 113 (1860); *Taylor v. Ferguson*, 87 Tex. 1, 26 S.W. 46 (1894); *Wood v. Chambers*, 20 Tex. 247, 254 (1857).

However, in this case appellees did not seek to have the conveyance from appellants to Intercontinental be declared fraudulent and void in order to attach the property and satisfy a debt. Appellees were not creditors of appellants. Appellees were interested persons who sought to enforce the deed restriction by means of an injunction. Section 24.02 allows an "interested person" to bring an action to void a transfer of real property. Since appellees were "interested persons" and not "creditors", the rule that a conveyance of exempt property may not be attacked as a fraudulent conveyance as to creditors has no ap-

plication. The trial court did not err in applying section 24.02 to this fact situation. Points of error one through five are overruled.

In response to Special Issue No. One, the jury found that the transfer of the property to Intercontinental by appellants was intended to delay or hinder appellees from obtaining an injunction or collecting attorney's fees. The jury found, in response to Special Issue No. Two, that Intercontinental purchased the property with notice of the intent of the appellants to delay or hinder appellees from obtaining an injunction or collecting attorney's fees.

In points of error six through twenty-three, appellants argue: there was insufficient evidence to support the submission of Special Issues Nos. One and Two; there was insufficient evidence to support the jury's findings in response to those issues; and the trial court erred in rendering judgment, in accordance with the jury verdict, that the conveyance between appellants and Intercontinental be declared void.

Appellants argue that appellees relied only upon a presumption arising from the failure to record the deed to Intercontinental, to support the submission of Special Issues Nos. One and Two. Appellants believe that when Mr. Radney denied any intent to hinder or delay and the representative of Intercontinental denied any notice of an intent to hinder or delay, there was insufficient evidence in the record to support either the submission of or the responses to Special Issues Nos. One and Two. We believe there is more than adequate circumstantial evidence to support the jury's answers.

The secrecy of appellants and Intercontinental was one factor the jury could consider in answering the special issues. The deed was unrecorded and appellants did not reveal that the property had been conveyed until the eve of the first trial setting. The purchaser of the property, Intercontinental, was a corporation registered in a country whose laws prevented the disclosure of the name of the beneficial owner of the corporation.

The transaction differed from the usual method of selling a home. Appellants did not list the home for sale with any real estate broker. There was no earnest money contract. Radney prepared all of the documents associated with the sale. Mr. Putterill, the representative of Intercontinental, made no effort to find out what the physical characteristics of the house were or even if there actually was a house on the lot. The funds for the down payment came from an account over which Putterill had no control.

■ The fact that litigation involving the property was pending at the time of the conveyance may be considered by the jury as some evidence that the conveyance was fraudulent. *Texas Sand Company v. Shield*, 381 S.W.2d 48 (Tex.1964). This litigation was pending in January, 1982, when Mr. Radney first met with Mr. Putterill in the Caymen Islands. Intercontinental was formed on February 15, 1982, three days before the date on the deed from appellants to Intercontinental.

The jury was also entitled to look at the interest the Radneys retained in the property. Mr. Radney retained a second mortgage on the property and was unconcerned about Intercontinental's ability to make its payments because he could foreclose on the mortgage. As part of the conveyance, Intercontinental leased the property back to appellants. Appellants continued to occupy the premises after the expiration of the term of the written lease.

■ Viewing all of these factors, we are unable to say that there was no evidence to support the submission of Special Issues Nos. One and Two to the jury. There was also legally and factually sufficient evidence to support the jury's response to those issues and the trial court's rendition of judgment in conformance with the verdict. Points of error six through twenty-three are overruled.

■ In points of error twenty-four through twenty-seven, appellants argue that the performance by them of the mandatory injunction is impossible because the property was conveyed to Intercontinental. Appellants' argument is premised on the assumption that the fraudulent conveyance statute is inapplicable to our fact situation. As stated above, section 24.02 of the Business and Commerce Code does apply and there was sufficient evidence to support the jury's answers to Special Issues Nos. One and Two. Since the trial court did not err in voiding the conveyance from appellants to Intercontinental, it is not impossible for appellants to perform the mandatory injunction. Points of error twenty-four through twenty-seven are overruled.

Points of error thirty-four and thirty-five concern whether the trial court erred in refusing to balance the equities in rendering its judgment. Appellants believe that the trial court erred in ordering that the second story of the garage be removed rather than allowing appellants to choose the least onerous method to bring the garage into compliance with the restriction.

■ We are aware that appellants spent a substantial amount of money on the garage construction. However, the fact that one landowner may suffer a greater injury due to the enforcement of the restriction does not compel refusal to enforce the restriction. *Gunnels v. North Woodland Hills Community Association*, 563 S.W.2d 334 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). The granting of a mandatory injunction ordering the removal of non-conforming structures is a proper way to enforce deed restrictions. *Viking Homes, Inc. v. Larkin*, 452 S.W.2d 25 (Tex. Civ.App.—Houston [14th Dist.] 1970, no writ). Appellants have failed to show the trial court abused its discretion when it granted the mandatory injunction ordering that the second story of the garage be removed. *See generally, Walker v. Race*, 612 S.W.2d 685 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Mini-Tape, Inc. v. Fields*, 566 S.W.2d 119 (Tex.Civ.App.— Houston [14th Dist.] 1978, no writ). We believe that the trial court did look at the competing interests before it ordered the removal of the second story of the garage. We cannot say that the trial court abused

its discretion by entering the mandatory injunction. Appellants' points of error thirty-four and thirty-five are overruled.

■ Point of error fifty is that the trial court erred in submitting Special Issue No. Four because the issue as submitted placed undue emphasis on the amount of work done, constituting a comment on the weight of the evidence by the trial court. Appellees sought attorney's fees in connection with this suit. At the time of trial, TEX. REV.CIV.STAT.ANN. article 1293b provided [1]:

(a) In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim.

(b) To determine reasonable attorney's fees, the Court shall consider:

(1) the time and labor required;

(2) the novelty and difficulty of the questions

(3) the expertise, reputation, and ability of the attorney;

(4) any other factor.

Special Issue No. Four asked the jury what sum of money, if any, do you find should be awarded to appellees "as reasonable attorney's fees, for services rendered by Plaintiff's attorney in relation to the amount of work expended. . . ." The issue did not indicate an opinion of the court on the amount of attorney's fees that should be awarded. Neither did the issue assume material disputed facts. While the issue could have included all of the factors set forth in the statute, we are unable to say that the issue as submitted constituted a comment on the weight of the evidence. Point of error fifty is overruled.

Appellants' points of error forty-four through forty-nine attack the jury's award of attorney's fees. Appellants attack the sufficiency of the evidence to support the submission of Special Issue No. Three and the jury's response thereto. Appellants also argue that appellees had to distinguish between the time spent on the fraudulent conveyance cause of action and the action to enforce the restrictive covenant.

■ There was sufficient evidence to support the submission of the special issue and the award of attorney's fees. The record contains testimony from two attorneys as to the number of hours worked, the qualifications of the attorneys involved, and the reasonableness of the fee. As stated above, a litigant who is successful in asserting an action based on a restrictive covenant has a statutory right to be awarded reasonable attorney's fees. There is both legally and factually sufficient evidence that the fees awarded were reasonable. Appellants believe that, under the statute, appellees could not recover for legal services rendered in relation to the fraudulent conveyance cause of action. We disagree.

The statute allows the recovery of attorney's fees in an action *based on* a restrictive covenant. We believe that the fraudulent conveyance action was in part based on and related to the breach of the restrictive covenant. The home had been conveyed by appellants, shortly prior to trial, to a foreign corporation. In order to obtain the complete relief to which they were entitled because of the breach, it was necessary for appellees to have the fraudulent conveyance voided. The fraudulent conveyance action would not have been necessary if appellants had not conveyed the property in order to avoid the suit to enforce the restriction. In this situation, the entire suit was based on the breach of the restriction. Appellants' points of error forty-four through forty-nine are overruled.

■ In point of error fifty-one, appellants argue the amount of attorney's fees awarded was excessive and remittitur should be ordered. The amount of a reasonable attorney's fee is a fact question to be determined by the jury. *Jack Roach Ford v. DeUrdanavia*, 659 S.W.2d 725 (Tex.App.—Houston [14th Dist.] 1983, no writ). Looking at the entire record, and

---

1. This provision is now included in the Property Code. TEX.PROP.CODE ANN. § 5.006.

**200**

viewing the matter in light of the testimony and the nature of the controversy, we are unable to say the award of attorney's fees was excessive. Point of error fifty-one is overruled.

The judgment is affirmed.