William C. SELVAGE and Wm. C. Selvage, Inc., a Utah corporation, Plaintiffs, Appellants, and Cross–Appellees,

v.

J.J. JOHNSON & ASSOCIATES, a Utah corporation; Sear–Brown Associates, a New York corporation; and The Sear–Brown Group, Inc., a New York corporation, Defendants, Appellees, and Cross–Appellants.

No. 950240–CA.

Court of Appeals of Utah.

Jan. 19, 1996.

---

Anthony L. Rampton and Robert Palmer Rees, Salt Lake City, for Appellants.

James A. Boevers, Salt Lake City, for Appellees.

Before ORME, GREENWOOD and WILKINS, JJ.

## OPINION

GREENWOOD, Judge:

William C. Selvage and William C. Selvage, Inc. (collectively "Selvage") appeal the amount of attorney fees awarded by the trial court against Sear–Brown Associates and The Sear–Brown Group, Inc. (collectively "Sear–Brown"). Sear–Brown cross-appeals the trial court's order finding it liable to Selvage under the Utah Uniform Fraudulent Transfer Act and a common law theory of mere instrumentality. We affirm in part and remand in part on the attorney fees issues.

## BACKGROUND [1]

In 1986, Selvage entered into an agreement with J.J. Johnson & Associates ("Johnson"), wherein they agreed that Selvage would sell his architectural business to Johnson. The arrangement involved three separate written contracts, each of which provided for attorney fees. On April 7, 1987, Selvage filed an action against Johnson, alleging breach of all three contracts. On September 30, 1988, while the lawsuit was pending, Sear–Brown became Johnson's sole shareholder, and on October 1, 1988, Johnson ceased to do business. Between October 1, 1988 and February 1989, Sear–Brown transferred to itself all of Johnson's assets. On July 6, 1990, Sear–Brown caused Johnson to file a bankruptcy petition.

On January 22, 1991, Selvage filed an Amended Complaint, contending for the first time that Sear–Brown was Johnson's alter ego, or, in the alternative, that "Sear–Brown has assumed the liabilities of J.J. Johnson and Associates or is otherwise responsible in law and fact for the liabilities of J.J. Johnson and Associates." In December 1992, Selvage filed a Second Amended Complaint, adding a mere instrumentality claim and claims under the Uniform Fraudulent Transfer Act (U.F.T.A.). Utah Code Ann. §§ 25–6–1 to –13 (1995). The complaint alleged liability pursuant to the U.F.T.A. under four theories. The first was that the transfers from Johnson were made to an insider, Sear–Brown, in

violation of section 25–6–6(2). The three remaining claims were brought under section 25–6–5(1)(a), alleging that the transfers were made with an intent to hinder, delay or defraud a creditor, namely Selvage.

Before trial, Sear–Brown filed a motion for summary judgment contending, among other things, that Selvage's insider transfer claim under the U.F.T.A. was barred by the one-year time limit in Utah Code Annotated section 25–6–10(3) (1995). The motion was denied.

At trial, the attorney who, until that time, had represented both Johnson and Sear–Brown, announced that he was no longer representing Johnson and would represent only Sear–Brown during the trial. At the end of Selvage's case, Sear–Brown moved for a directed verdict, again arguing the U.F.T.A.'s one-year time limit barred the insider transfer claim. The motion was denied. However, the trial court granted Selvage's motion for a directed verdict against Johnson on the grounds that Johnson had failed to appear and mount a defense. Accordingly, the jury returned special interrogatories finding Johnson liable to Selvage in the amount of $109,400.32, plus interest and costs. The jury also found by special interrogatory that Sear–Brown was liable to Selvage for the amounts owed to Selvage by Johnson under all of the U.F.T.A. claims and under the mere instrumentality theory.

After trial, Selvage's attorney filed an affidavit with the court in support of Selvage's application for prejudgment interest and attorney fees. The affidavit attached billing records describing the services rendered, by whom they were rendered, and the billing rates. The affidavit stated that a reasonable attorney fee was $175,000. Sear–Brown did not contest the requested amount of attorney fees, nor the affidavit in support of the application for attorney fees. It did, however, contend that fees were recoverable only for the contract claims, and that because the affidavit did not allocate time among the various causes of action, no fees should be awarded.

---

1. On appeal from a jury verdict the evidence, and all reasonable inferences drawn therefrom, is viewed in the light most favorable to the ver-

dict, and we recite the facts accordingly. *Pratt v. Prodata, Inc.,* 885 P.2d 786, 787 (Utah 1994).

The trial court adopted the jury's findings and awarded Selvage judgment against Johnson for $191,644.60 in principal, costs and interest, and $42,500 in attorney fees. The trial court's award of attorney fees was founded upon the attorney fee provision in the three contracts between Selvage and Johnson. The trial court's findings of fact state the amount of the attorney fees award is based on "the amount in dispute, the complexity of the issues presented, the hourly rates charged by the plaintiffs' attorneys and the total evidence presented at trial."

The trial court entered judgment for Selvage against Sear–Brown in the same amounts as it awarded against Johnson. The trial court also concluded that Selvage's insider transfer claim was not time-barred by section 25–6–10(3) of the U.F.T.A. because of the discovery and relation back rules.

Both parties appeal. Sear–Brown contends that the insider transfer claim was barred by the U.F.T.A.'s one-year time limit, and that this limit is a statute of repose and not a statute of limitation. It further argues that the evidence did not support the jury verdict under the intent to hinder, delay or defraud, and that it was error to conclude that Johnson was the mere instrumentality of Sear–Brown.[2] Selvage challenges the trial court's award of attorney fees, contending that: the award of $42,500 in attorney fees is inadequate; the trial court failed to enter sufficient findings of fact and conclusions of law; and the trial court abused its discretion by failing to grant an evidentiary hearing on the question of attorney fees.

## STANDARDS OF REVIEW

■ Whether the time limit for the insider transfer claim is a statute of repose or a statute of limitation is an issue of statutory interpretation, which we review for correctness as a question of law. *State v. Larsen,* 865 P.2d 1355, 1357 (Utah 1993). The application of the time limit is also a question of law, reviewed for correctness. *Gramlich v. Munsey,* 838 P.2d 1131, 1132 (Utah 1992); *McKean v. McBride,* 884 P.2d 1314, 1316–17

**2.** Because we affirm the judgment against Sear–Brown based upon the U.F.T.A., it is not neces-

(Utah App.1994), *cert. denied,* 899 P.2d 1231 (Utah 1995).

■ Review of the jury's verdict, however, places a difficult burden on the challenging party. "To support a claim that the jury verdict is against the clear weight of the evidence, an appellant must marshal all of the evidence that supports the findings and demonstrate that when viewed in the light most favorable to the verdict, there is insufficient evidence to support it." *Steenblik v. Lichfield,* 906 P.2d 872, 875 (Utah 1995). Furthermore, all reasonable inferences are drawn in favor of the verdict, and if the evidence supports the verdict, we will affirm. *Id.*

■ Whether attorney fees are recoverable in an action is a question of law, which is reviewed for correctness. *See Robertson v. Gem Ins. Co.,* 828 P.2d 496, 499 (Utah App. 1992). Similarly, whether the trial court's findings of fact in support of an award of attorney fees are sufficient is also a question of law, reviewed for correctness. *See State v. Pharris,* 846 P.2d 454, 459 (Utah App.), *cert. denied,* 857 P.2d 948 (Utah 1993) (citing *State v. Ramirez,* 817 P.2d 774, 782 (Utah 1991)). However, "the trial court has broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard." *Dixie State Bank v. Bracken,* 764 P.2d 985, 991 (Utah 1988); *Regional Sales Agency v. Reichert,* 784 P.2d 1210, 1215 (Utah App.1989), *vacated on other grounds,* 830 P.2d 252 (Utah 1992).

## ANALYSIS

### I. Timeliness of the Insider Transfer Claim

■ Sear–Brown appeals the trial court's ruling that Selvage's insider transfer claim was not time-barred. At trial, the jury found Sear–Brown liable, in part, on the grounds that the transfer of Johnson's assets to Sear–Brown was an insider transfer. The insider transfer claim was based upon section 25–6–6(2) of the U.F.T.A., which provides:

sary to reach the issues regarding the mere instrumentality claim.

A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent.

Utah Code Ann. § 25–6–6(2) (1995). The jury found, by special interrogatory, that Selvage had proved all of these elements at trial. However, this section is governed by the time limits section of the U.F.T.A., section 25–6–10, which provides:

A claim for relief or cause of action regarding a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

. . . . .

(3) under Subsection 25–6–6(2), within one year after the transfer was made or the obligation was incurred.

Utah Code Ann. § 25–6–10 (1995). Sear–Brown argues that Selvage's insider transfer claim is time-barred by the one-year time limit in section 25–6–10(3) because it was not asserted until the Second Amended Complaint, filed in December 1992, whereas the insider transfer was completed in February 1989.

The trial court ruled that, pursuant to the discovery and relation back doctrines, Selvage's insider transfer claim was not barred by the one-year statute of limitation. On appeal, Sear–Brown argues that the time limit in section 25–6–10(3) is a statute of repose, and that the discovery and relation back doctrines are not applicable to a statute of repose. We disagree with the contention that section 25–6–10(3) is a statute of repose.

▮ In Utah, the determination of "[w]hether a statute that bars or terminates a claim for relief is a statute of limitations or a statute of repose depends on the nature of the statute and the manner in which it operates to cut off the legal right of a person to obtain a remedy for an injury." *Stoker v. Workers' Compensation Fund*, 889 P.2d 409, 411 (Utah 1994). Beginning with the Utah Supreme Court's decision in *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985), Utah courts have consistently

followed the same test for determining whether a time limit is a statute of repose or one of limitation. Simply put, a statute of repose begins to run from a date or event independent and unrelated to the date of legal injury. By contrast, a statute of limitation does not begin to run until the cause of action has accrued. *Id.* at 672 ("A statute of repose bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action."); *Raithaus v. Saab–Scandia of Am., Inc.*, 784 P.2d 1158, 1161 (Utah 1989) (finding Utah Product Liability Act "fits squarely within the precise definition of a statute of repose because the period of limitation begins to run from a date unrelated to an injury."); *Middlestadt v. Industrial Comm'n*, 852 P.2d 1012, 1013 (Utah App.1993) (stating that "statute requiring filing within a set period following the accident is therefore a statute of limitation, not a statute of repose."); *Avis v. Industrial Comm'n*, 837 P.2d 584, 587 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993) (finding time limit for filing claim for compensation with industrial commission "is a statute of limitations because it runs from the date of injury, when the cause of action accrues, not from a point in time unrelated to when the cause of action arose."); *Velarde v. Industrial Comm'n*, 831 P.2d 123, 125 (Utah App.1992) ("A statute of repose ... prevents suit a statutorily specified number of years after a particular event occurs, without regard to when the cause of action accrues.").

▮ Applying this test to section 25–6–10(3), we must therefore determine whether the time limit begins to run when the cause of action accrues, or is triggered by an event unrelated to the injury. Section 25–6–10(3) prohibits a claim under section 25–6–6(2) unless it is brought "within one year after the transfer was made." Utah Code Ann. § 25–6–10(3) (1995). The "transfer" referred to in section 25–6–10(3) is the same transfer which gives rise to a claim under section 25–6–6(2). Therefore, it is apparent that the two events—the commencement of the running of the section 25–6–10(3) time limit, and the creation of the insider transfer claim—are, in

fact, simultaneous. Because a claim under 25–6–6(2) does not accrue until the event causing the injury, the time limit in section 25–6–10(3) is a statute of limitation.

Sear–Brown advances two additional arguments, neither of which changes the results of this analysis. First, Sear–Brown refers to the Comment to section 9 of the Uniform Fraudulent Transfer Act (Uniform Act), which notes that the purpose of section 9 "is to make clear that lapse of the statutory periods ... bars the right and not merely the remedy." Unif.Fraudulent Transfer Act § 9 cmt. 1, 7A U.L.A. 665–66 (1985). Sear–Brown contends that because the comment speaks of barring a right, and not just a remedy, it indicates that the time limit was intended to act as a statute of repose. This, however, is a purely semantic argument. The Utah Supreme Court has acknowledged the small weight accorded to semantic distinctions in this area, noting that "[r]eferences to 'statutes of limitations' in cited material should not confuse the reader since many courts and commentators do not distinguish between statutes of limitations and repose." *Sun Valley Water Beds v. Hughes & Son, Inc.*, 782 P.2d 188, 189 n. 5 (Utah 1989); *cf. Berry*, 717 P.2d at 679 (rejecting argument that statute of repose does not abrogate claim, but only defines time during which the claim exists, because "constitutional protection cannot be evaded by the semantic argument that a cause of action is not cut off but only defined to exist for a specified period of time."). Similarly, we do not believe this single reference in the commentary to the Uniform Act, without further clarifying explanation, undermines the validity of the well-established and consistently-applied distinction between statutes of limitation and repose discussed above.[3] Furthermore, the fact that a time limit acts to bar a suit does not transform that statute into one of repose—were this the case, all statutes of limitation could also be interpreted as statutes of repose. Accordingly, the commentary to the Uniform Act does not persuade us that section 25–6–10(3) is a statute of repose.

Second, Sear–Brown argues that even if the time limit in section 25–6–10(3) is a statute of limitation, the discovery rule still does not apply.[4] Sear–Brown argues that because section 25–6–10(1) contains an explicit discovery rule,[5] and the other two sections of the time limits statute do not, the legislature implicitly meant to preclude the application of the discovery rule to claims brought under subsections (2) or (3). However, as the Utah Supreme Court noted in *Klinger v. Kightly*, 791 P.2d 868 (Utah 1990), a statutory discovery rule is only one rationale for invoking the discovery rule. *Id.* at 872. The discovery rule also applies in situations where "there is proof of concealment or misleading by the defendant" or where "application of the general statute of limitation rule would be irrational or unjust." *Id.* Accordingly, the trial court could properly have applied the discovery rule in the absence of statutory authority to do so.

On appeal, Sear–Brown does not challenge the trial court's application of the discovery rule on either of the alternate grounds given in *Klinger*. Instead, Sear–Brown contends that Selvage should have been on notice of the facts giving rise to the insider transfer claim in October 1991, when Sear–Brown produced certain documents which provided the basis for the insider preference claims at trial. Sear–Brown argues that because these documents were produced more than one year before the filing of the Second Amended Complaint in December 1992, the first complaint to make claims under the U.F.T.A., the

---

3. In addition, we note that comments of Uniform Law commissioners or compilers do not have the force of law.

4. "The general rule regarding statutes of limitations is that the limitation period begins to run when the last event necessary to complete the cause of action occurs. The discovery rule is an exception to the general rule, and it delays the running of the limitation period 'until the discovery of facts forming the basis for the cause of action.'" *Sevy v. Security Title Co. of So. Utah*, 902 P.2d 629, 634 (Utah 1995) (citations omitted).

5. Section 25–6–10(1) provides that a claim under subsection 25–6–5(1) is extinguished within four years after the transfer was made or the debt was incurred, "or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Utah Code Ann. § 25–6–10(1) (1995).

insider transfer claim is time-barred by the one-year time limit in section 25–6–10(3). This argument is contrary to the trial court's determination that the insider transfer claim "was not brought more than one year after the transfer took place and not more than one year after the plaintiffs were provided with all the documentation ... relating to the questioned transfers."

Sear–Brown's arguments fail for several reasons. First, this contention was not raised by Sear–Brown until its reply brief. As a general rule, an issue raised in a reply brief will not be considered on appeal. *Romrell v. Zions First Nat'l Bank, N.A.*, 611 P.2d 392, 395 (Utah 1980). Furthermore, Sear–Brown did not marshal the evidence supporting the trial court's pertinent findings, instead selecting only evidence supporting its position. Such selective presentation is not sufficient to challenge the trial court's findings. *Oneida/SLIC v. Oneida Cold Storage & Warehouse, Inc.*, 872 P.2d 1051, 1053 (Utah App.1994). For these reasons, we decline to question the trial court's application of the discovery rule and accept its findings on the subject as valid. *Id.*

In addition, Sear–Brown argues that the trial court erred in applying Rule 15(c) of the Utah Rules of Civil Procedure to relate back the Second Amended Complaint to the date of the first Amended Complaint. Rule 15(c) provides that when "the claim ... asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Utah R.Civ.P. 15(c). Such an amendment is allowed, if certain criteria are met, even if the statute of limitation has run in the meantime. *Meyers v. Interwest Corp.*, 632 P.2d 879, 882 (Utah 1981); *Ringwood v. Foreign*

*Auto Works, Inc.*, 786 P.2d 1350, 1359 (Utah App.), *cert. denied, sub nom. Ringwood v. Hernandez*, 795 P.2d 1138 (Utah 1990).

Sear–Brown's only argument addressing the relation back ruling is based on *Diehl Lumber Transportation, Inc. v. Mickelson*, 802 P.2d 739 (Utah App.1990). However, this argument was based upon the assumption that the time limit in section 25–6–10(3) is a statute of repose, and is therefore "jurisdictional," an argument which we have rejected. Furthermore, *Diehl* addressed only the time limit for filing an action based on a mechanics' lien, which is governed by considerations specific to the mechanics' lien context. *Id.* at 744. Accordingly, *Diehl* is not applicable, and does not defeat the application of Rule 15(c) to Selvage's claims under the U.F.T.A.[6]

The trial court correctly determined that the time limit for the insider transfer claim in section 25–6–10(3) was a statute of limitation, and not one of repose. Furthermore, pursuant to the *Klinger* opinion, the trial court did not err by applying the discovery rule, despite the absence of a statutory discovery provision. Likewise, Sear–Brown has not persuaded us that the trial court erred in applying the relation back doctrine of Rule 15(c). Selvage's insider transfer claim under section 25–6–6(2) was therefore timely. Because Sear–Brown concedes that "[i]t is undisputed that Johnson Associates' transfers to Sear–Brown in partial satisfaction of antecedent debts met the elements of insider transfers" under section 25–6–6(2), Sear–Brown remains liable under the insider transfer provision of the U.F.T.A.[7]

## II. Sufficiency of Evidence

Sear–Brown contends that the evidence was insufficient to support the jury's findings of an intent to hinder, delay or

---

6. Incidentally, application of Rule 15(c) moots Sear–Brown's arguments as to when Selvage discovered or should have discovered the facts relevant to the Second Amended Complaint.

7. In addition to finding liability under the insider provision, the trial court also found liability based upon section 25–6–5(1)(a) under the intent to hinder, delay or defraud provisions. Sear–Brown contends on appeal that the improper

inclusion of instructions and presentation of evidence on the time-barred insider transfer claim prejudiced the jury, and invalidates their findings under section 25–6–5(1)(a). Because we find that the insider transfer claim was not time-barred, and therefore properly submitted to the jury, and because Sear–Brown concedes liability on the insider transfer claim, we need not address these issues.

defraud, because the only evidence submitted was evidence of a preferential transfer, which, standing alone, is insufficient to support such findings. Further, Sear–Brown argues that the jury did not understand that a preferential transfer is not the same as a fraudulent transfer—that the former may be set aside if the action is timely, without any fault finding, but that the latter may be voided only if there is actual intent to hinder, delay or defraud.[8]

Selvage counters that the jury was properly instructed and that the evidence presented supports the jury's determination. Selvage further argues that Sear–Brown has failed to properly marshal all the evidence supporting the jury's findings.

The trial court found that between September 30, 1988 and February 17, 1989, while Johnson was insolvent, Johnson transferred to Sear–Brown assets with a value of at least $504,478.94. The jury determined, by special interrogatories, that Selvage had shown by a preponderance of the evidence that the asset transfer was made with an actual intent to hinder or delay Johnson's creditors. The jury also determined, again by special interrogatories, that Selvage had shown by clear and convincing evidence, that the transfer was made with actual intent to defraud Johnson's creditors.

■■■ After review of the trial proceedings, we conclude there is substantial credible evidence to support the jury's determination that the transfer of Johnson's assets to Sear–Brown was made with an actual intent to hinder, delay or defraud. The pertinent statute states:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) with *actual intent to hinder, delay, or defraud* any creditor of the debtor;

Utah Code Ann. § 25–6–5(1) (1995) (emphasis added). The statute also enumerates factors which the fact-finder may consider, among others, to determine if "actual intent" existed. These include whether:

(a) the transfer or obligation was to an insider;

(b) the debtor retained possession or control of the property transferred after the transfer;

(c) the transfer or obligation was disclosed or concealed;

(d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) the transfer was of substantially all the debtor's assets;

(f) the debtor absconded;

(g) the debtor removed or concealed assets;

(h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Utah Code Ann. § 25–6–5(2) (1995). These enumerated factors, along with others determined to be relevant in a given case, are termed "badges of fraud." *See Dahnken, Inc. v. Wilmarth,* 726 P.2d 420, 423 (Utah 1986) (applying former version of U.F.T.A., noting that "[a]lthough actual fraudulent intent must be shown ... its existence may be inferred from the presence of certain indicia

---

8. Sear–Brown also argues, in part, that the improper submission of the insider claim confused the jury. This contention fails for two reasons. First, the submission of the insider claim to the jury was not improper because, as discussed, the insider claim was not time-barred. Second, the fact that a transfer was to an insider is one of the

enumerated statutory factors which the jury may consider in determining if there was actual intent to hinder, delay or defraud. *See* Utah Code Ann. § 25–6–5(2)(a) (1995). Therefore, even if the insider claim itself was time-barred, the *evidence* of an insider transfer was still properly before the jury.

of fraud or 'badges of fraud.' ") (citation omitted). Such indicators of fraud have been described as facts which "throw suspicion on a transaction and which call for an explanation ... facts having a tendency to show the existence of fraud, although their value as evidence is relative not absolute." *Territorial Sav. & Loan Ass'n v. Baird,* 781 P.2d 452, 462 (Utah 1989) (citation omitted).

 The existence of fraudulent intent is a factual question, which may be inferred from all of the attendant circumstances. *See id.* It necessarily involves weighing the evidence presented and assessing the credibility of witnesses—tasks largely within the province of the fact-finder. *In re Beesley,* 883 P.2d 1343, 1349 (Utah 1994); *State v. Delaney,* 869 P.2d 4, 6 (Utah App. 1994); *State v. Harmon,* 854 P.2d 1037, 1040 n. 4 (Utah App.1993), *aff'd,* 910 P.2d 1196 (Utah 1995); *State v. Garrett,* 849 P.2d 578, 582 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993).

Substantial evidence was presented to the jury in the instant case, which met certain of the enumerated statutory factors, from which the jury could infer an actual intent to hinder, delay or defraud. We refer to some, but not all, of this evidence. The evidence established that between October 1, 1988 and February of 1989, all of Johnson's assets were transferred to Sear–Brown. Johnson was insolvent when these transfers occurred, as its liabilities exceeded its assets by $499,-000. The jury heard testimony that Sear–Brown owned all of Johnson's stock at the time of the transfers, compelling the conclusion that Sear–Brown was an insider. Evidence was also presented that Sear–Brown waited almost two years after the transfers before placing Johnson into bankruptcy in July of 1990, and did not disclose the transfers on the bankruptcy schedules prepared by an attorney hired by and paid for by Sear–Brown. In fact, Leon Clary, Sear–Brown's president, testified at trial that part of the decision regarding the date for placing Johnson into bankruptcy was to allow the one-year statute of limitation to expire. The jury also heard evidence that Selvage sued Johnson in the spring of 1987, prior to the asset transfer, and that the transfers were made at or near the time that Selvage filed his motion for summary judgment on the promissory note executed by Johnson. Furthermore, as the trial court observed in its findings of fact, Selvage's pending lawsuit was discussed at a board meeting on August 6, 1988, and instructions were given to continue negotiations with Selvage to try to settle the litigation. The jury could have reasonably inferred that these negotiations were intended to buy time to complete the transfer of Johnson's assets to Sear–Brown.

As to the amount of consideration received by the debtor, the jury was presented with evidence from which it could infer that the consideration Johnson received was not equivalent to the value of the assets transferred to Sear–Brown. Selvage also presented evidence that Sear–Brown undervalued Johnson's business by excluding factors such as its value as an ongoing business and its good will. The jury could also consider that Johnson did not concede the validity of the debt to Selvage until the eve of trial, despite having been controlled by Sear–Brown for some time. The existence of even a single one of these factors "may establish and stamp a transaction as fraudulent." *Territorial Sav.,* 781 P.2d at 462 (citations omitted). Therefore, the jury properly found that Sear–Brown's actions indicated an intentional attempt to hinder, delay or defraud rather than merely a bona fide purpose to reduce Johnson's debt to Sear–Brown. *See Georgia–Pac. Corp. v. Lumber Prods. Co.,* 590 P.2d 661, 665 (Okla.1979) (noting motivation is pivotal in determining actual intent). While the evidence was sufficient to meet the clear and convincing standard of proof necessary to establish fraud, it even more certainly meets the less stringent preponderance of the evidence standard necessary to prove an intent to hinder or delay.[9]

---

9. In *In re Estate of Reed,* 566 P.2d 587 (Wyo. 1977), the court construed similar language in the Uniform Fraudulent Conveyance Act, and noted that "[a]n intent to 'hinder or delay' is sufficient to void a transfer even though there is no actual fraud as contemplated following the disjunctive 'or.'" *Id.* at 590. The court also observed that intent can rarely be established directly, and therefore circumstantial evidence must be examined as to the circumstances sur-

 To the extent that Sear–Brown contends that the elements of preferential and fraudulent transfers are mutually exclusive, we disagree. The facts that establish a preferential transfer may also be relevant to a fraudulent transfer. In fact, the very first of the enumerated factors which the jury may consider is whether "the transfer or obligation was to an insider." Utah Code Ann. § 25–6–5(2)(a) (1995). The critical added element is intent. In this case, the jury had before it the facts establishing an insider transfer, additional facts—most notably the existence of Selvage's lawsuit prior to the transfer and Sear–Brown's decision to place Johnson into bankruptcy—and an opportunity to listen to and observe witnesses testifying at trial. Based upon that experience, the jurors could reasonably have inferred an intent to hinder, delay or defraud. Accordingly, we affirm the trial court's determination that the transfer violated section 25–6–5(1) because it was made with an actual intent to hinder, delay or defraud.

### III. Award of Attorney Fees

After the conclusion of trial, both parties submitted proposed findings of fact and conclusions of law in support of their positions regarding an award of attorney fees. Selvage requested $175,000 in attorney fees, and submitted a supporting affidavit which attached detailed billing records. The trial court awarded Selvage $42,500 in attorney fees, making specific reference to the attorney fees provisions in the contracts between Selvage and Johnson.

 Selvage appeals the trial court's award, contending that the trial court abused its discretion by not awarding all of the requested attorney fees, by failing to make sufficient findings of fact explaining the reduction in the amount of fees, and by refusing to hold an evidentiary hearing. Sear–Brown responds that the trial court's award of attorney fees should be upheld because it

was properly based upon a reasonable fee for enforcing the original contract action only, and that the findings of fact implicitly support the fee award. Sear–Brown also argues that Selvage's failure to allocate between fees incurred on the contract and non-contract claims would have justified denial of the fee application in its entirety. Finally, Sear–Brown contends Selvage was not entitled to an evidentiary hearing because Selvage had an adequate opportunity to be heard.

 In Utah, the general rule "is that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994); *Jensen v. Bowcut*, 892 P.2d 1053, 1058 (Utah App.), *cert. denied*, 899 P.2d 1231 (Utah 1995). Accordingly, in order to recover all of his requested attorney fees, Selvage must demonstrate that there is either contractual or statutory authorization for such an award.[10]

 On appeal, Selvage does not contend that the contractual attorney fees provisions entitled him to all the fees he requested. Rather, he relies on statutory and case law arguments in support of this position. Turning to Selvage's statutory argument, he claims an award of attorney fees is authorized under the U.F.T.A. Specifically, Selvage refers to section 25–6–9(2) which provides that the creditor may recover "the amount necessary to satisfy the creditor's claim." Utah Code Ann. § 25–6–9(2) (1995). In interpreting the meaning of a statute, the court must look first to its plain language. A statute will not be interpreted to contravene its plain meaning. *Salt Lake Therapy Clinic v. Frederick*, 890 P.2d 1017, 1020 (Utah 1995); *Harmon v. Ogden City Civil Serv. Comm'n*, 890 P.2d 4, 6 (Utah App.), *cert. granted*, 899 P.2d 1231 (Utah 1995). By its plain meaning, the language upon which Selvage relies does not include attorney fees.

rounding the transactions in question. *Id.* at 590–91.

**10.** However, as this court noted in *Jensen v. Bowcut*, 892 P.2d 1053, 1058 (Utah App.), *cert. denied*, 899 P.2d 1231 (Utah 1995), "there are exceptions to the general rule that attorney fees

may only be awarded pursuant to contract or statute." *See also Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994). Because Selvage has not argued at trial or on appeal that any such exception applies, we do not consider that possibility.

The statute's language never specifically refers to attorney fees, but instead only to the amount of the creditor's claim. A claim for damages under the U.F.T.A. is separate and distinct from an award of attorney fees. *See, e.g., Dixie State Bank v. Bracken,* 764 P.2d 985, 990 (Utah 1988) (treating damages and attorney fees as separate, noting that amount of damages does not necessarily place limit on amount of attorney fees) (citing *Cabrera v. Cottrell,* 694 P.2d 622, 625 (Utah 1985)); *Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 965 (Utah App.1989) ("[E]ven if attorney fees are recoverable in this case they are *not* properly classified as 'general damages.' "). In this case, Selvage's "creditor claim" is the amount owed by Johnson under the three contracts, including the attorney fees incurred to enforce those contracts, but not fees to enforce any rights under the U.F.T.A.

Next, Selvage contends that he is entitled to all of his attorney fees under the analysis conducted in *Radney v. Clear Lake Forest Community Ass'n,* 681 S.W.2d 191 (Tex.Ct.App.1984). In *Radney,* the plaintiff homeowners' association sought to enforce a deed restriction against a homeowner who had constructed a garage in violation of the restriction. *Id.* at 193–94. Shortly before trial, however, the homeowners' association was informed that the property had been transferred to an offshore corporation, whereupon the homeowners' association amended its complaint to include a fraudulent conveyance claim. *Id.* at 194. After prevailing at trial, the homeowners' association sought to recover attorney fees pursuant to a Texas statute allowing the prevailing party in a restrictive covenant dispute to recover reasonable attorney fees. The homeowner argued that recovery of attorney fees under the statute did not extend to those fees incurred in pursuit of the fraudulent conveyance claim, as this claim was not covered by the statute. *Id.* at 199. The Texas Court of Appeals disagreed:

> The statute allows the recovery of attorney's fees in an action *based on* a restrictive covenant. We believe that the fraudulent conveyance action was in part based on and related to the breach of the restrictive covenant.... In order to obtain the complete relief to which they were entitled because of the breach, it was necessary for appellees to have the fraudulent conveyance voided. The fraudulent conveyance action would not have been necessary if appellants had not conveyed the property in order to avoid the suit to enforce the restriction. In this situation, the entire suit was based on the breach of the restriction.

*Id.* Selvage urges this court to adopt the same reasoning, and find Sear–Brown liable for the attorney fees incurred in pursuing the claims under the U.F.T.A.

■ Although the reasoning of the *Radney* court may have some merit, adoption of the position urged by Selvage would contravene the plain language of the U.F.T.A., as discussed above, allowing an award of attorney fees clearly not authorized by the statute. Such a result would "infer substantive terms into the text that are not already there." *Harmon,* 890 P.2d at 6 (citations omitted). Because this "court has no power to rewrite the statute to conform to an intention not expressed," *id.,* we must reject the reasoning of the *Radney* court, at least as concerns the instant statutory context. *See Spanier v. United States Fidelity & Guar. Co.,* 127 Ariz. 589, 623 P.2d 19, 28–30 (App. 1980) (adhering to general rule that attorney fees are only awarded under contract or statute, rejecting arguments that attorney fees are recoverable in every fraudulent conveyance action). Therefore, Selvage is not entitled to attorney fees incurred in pursuit of the non-contract claims.

■ Finally, Selvage contends that the mere instrumentality theory,[11] upon which Selvage prevailed at trial, "places Sear–Brown directly in Johnson's shoes" and that "Sear–Brown is directly and contractually liable for those fees." However, Selvage cites no authority for this proposition, nor does he provide any further analysis as to why Sear–Brown should be liable for attorney fees simply because a mere instrumentality claim

---

11. Although we do not reach the propriety of the mere instrumentality theory, as discussed *supra* note 2, we assume for purposes of this argument that the theory was properly submitted to the jury and the evidence supported the jury's verdict.

was the tool used to enforce liability on the contracts. Mere assertions are not enough to defeat the application of the general rule that attorney fees are proper only where authorized by statute or contract. Utah R.App.P. 24(a)(9); *State v. Wareham*, 772 P.2d 960, 966 (Utah 1989) (declining to address issue where "brief wholly lacks legal analysis and authority to support" argument); *State v. Reiners*, 803 P.2d 1300, 1301 n. 2 (Utah App.1990) (declining to address issue where "argument contains no citations to authorities and only vague reasoning"). Therefore, Selvage is not entitled to attorney fees incurred litigating the mere instrumentality claim.

■■■ While it follows, given the posture of this case, that Selvage is entitled only to the attorney fees he reasonably incurred in enforcing his contractual rights, it does not automatically follow that the amount awarded by the trial court can be sustained. We must now determine whether the trial court's findings of fact were sufficient to support the amount of the award.

■■■ In making an award of attorney fees, the trial court must consider certain factors, and make findings of fact supporting its conclusion. Utah appellate courts have "consistently encouraged trial courts to make findings to explain the factors which they considered relevant in arriving at an attorney fee award." *Regional Sales Agency*, 784 P.2d at 1215; *see, e.g., Willey v. Willey*, 866 P.2d 547, 555 (Utah App.1993).

The trial court's findings of fact recite that the award of $42,500 in attorney fees is based on "the amount in dispute, the complexity of the issues presented, the hourly rates charged by the plaintiffs' attorneys and the total evidence presented at trial." Such conclusory statements do not satisfy the requirement that awards of attorney fees must be supported by adequate findings of fact. *See,*

*e.g., Willey*, 866 P.2d at 555–56; *Rappleye v. Rappleye*, 855 P.2d 260, 266 (Utah App.1993); *Martindale v. Adams*, 777 P.2d 514, 517–18 (Utah App.1989).

■■■ The need for sufficiently detailed findings is especially great where, as here, the reasonableness of the fee and the supporting affidavit were uncontroverted by the opposing party. Selvage argues that under Utah law, the reduction of an uncontroverted fee calls for an explanation of the reduction which explicitly considers the relevant factors. In support of this proposition, Selvage notes that:

> a trial court abuses its discretion in awarding less than the amount of attorney fees requested when there is adequate and uncontroverted evidence in the record to support those fees *unless the court offers an explanation for the reduction considering the factors previously discussed.*

*Regional Sales Agency*, 784 P.2d at 1215 (emphasis added); *see also Dixie State Bank*, 764 P.2d at 989–91. In short, when reducing an uncontroverted fee, "it is necessary that the trial court, on the record, *identify such factors and otherwise explain* the basis for its sua sponte reduction." *Martindale*, 777 P.2d at 518 (emphasis added).[12] Selvage argues that although the trial court listed the factors upon which it based its award, it did not explain how these factors acted to reduce the amount of attorney fees awarded.

Sear–Brown responds that under a "fair reading" of the record, the trial court did, in fact, make sufficient findings to uphold the award of $42,500 in fees to Selvage. Sear–Brown argues that findings of fact "can be implied if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding." *Hall v. Hall*, 858 P.2d 1018, 1025 (Utah App. 1993). Sear–Brown argues that because the amount of the attorney fees award is approx-

---

12. Vague statements which require speculation as to the actual reasons behind the ruling are not enough to meet this burden. In *Willey*, in reviewing the trial court's reduction of fees, this court noted that:

> The [trial] court merely noted in its oral ruling that [the amount of attorney fees] was a "very

unfortunate use of funds." While this statement may indicate the trial court believed both parties' fees were unreasonable, it *does not constitute a finding* addressing the reasonableness of Mrs. Willey's attorney fees according to the *Bell* [*v. Bell*, 810 P.2d 489 (Utah App. 1991)] factors.

*Willey*, 866 P.2d at 556 (emphasis added).

imately the same as the amount of fees incurred by Selvage prior to Johnson's bankruptcy,[13] this court can determine that the trial court implicitly reached this same conclusion under the *Hall* analysis.

However, this conclusion does not meet the requirements of the *Hall* test for implying findings of fact. To satisfy *Hall*, there must be clear evidence that the court "actually considered" and "necessarily" made its findings. *Id.* As noted, the trial court's findings of fact based the award of attorney fees on "the amount in dispute, the complexity of the issues presented, the hourly rates charged by the plaintiffs' attorneys and the total evidence presented at trial." From this, it is not clear that these factors were *actually* considered (no details to support this belief are mentioned), nor that the result was *necessary* (no clear mathematical support for the result was presented by Sear–Brown).[14] We cannot conclude that the amount awarded by the trial court was supported by implied findings of fact, and cannot therefore affirm the award on this basis. Accordingly, we remand this issue to the trial court for entry of findings of fact supporting the amount of the award of attorney fees for enforcement of the contracts, and for any appropriate revision of the award as such findings may suggest.[15]

Finally, we address the issue of whether the trial court abused its discretion in refusing to hold an evidentiary hearing on the issue of attorney fees. As noted, both parties submitted proposed findings of fact and conclusions of law, and the trial court heard argument on the issue. This court's concern is not that another hearing be held, if such a hearing is not necessary, but that the trial court enter sufficient findings of fact to justify the award of attorney fees. If, upon remand, the trial court is able to enter sufficient findings of fact from the evidence already submitted, it is within its discretion to do so. Otherwise, it is free to accept evidence or briefing in whatever manner it deems appropriate, and then enter findings of fact.

## CONCLUSION

We agree with the trial court that the time limit for bringing an insider transfer claim in section 25–6–10(3) of the U.F.T.A. is a statute of limitation, not a statute of repose. Furthermore, the trial court did not need statutory authority to apply the discovery rule, and did not err in applying the relation back rule. Therefore, the insider transfer claim was properly submitted to the jury. We also find that there was sufficient evidence presented to the jury to support its finding that Sear–Brown acted with an actual intent to hinder, delay or defraud. Because Sear–Brown was found independently liable on four separate grounds under the U.F.T.A., we do not address whether the mere instrumentality claim was properly submitted to the jury. Finally, we uphold the trial court's determination that Selvage is entitled only to attorney fees incurred in pursuing the original contract claims, but remand to the trial court to enter further findings of fact, or to hold an evidentiary hearing and then make findings of fact, at its discretion, regarding the amount of fees awarded. Both parties

13. Selvage and Sear–Brown agree that Selvage incurred $45,811.90 in fees prior to the time Johnson filed its bankruptcy petition.

14. The *Hall* court noted that implied findings must be based upon "detailed subsidiary findings of fact ... which, by themselves, show the steps by which the court arrived at its apparent conclusion." *Hall*, 858 P.2d at 1025. Such detailed findings of fact do not appear in the record before this court.

15. Sear–Brown notes that the trial court could have denied Selvage's entire request for attorney fees because he did not allocate between those fees incurred in enforcing liability on the contracts and those incurred pursuing non-contract claims, relying upon *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269–70 (Utah 1992) and *Schafir v. Harrigan*, 879 P.2d 1384, 1394 (Utah App.1994). However, Sear–Brown did not cross-appeal the trial court's decision to award attorney fees, and so this issue is not properly before the court. Furthermore, while it may be proper to deny a request for attorney fees if the requesting party fails to allocate in accord with the directive of *Cottonwood Mall*, such a decision is within the trial court's discretion, rather than being a strict legal requirement. *Schafir*, 879 P.2d at 1394.

are to bear their own costs and attorney fees on appeal.

ORME, P.J., and WILKINS, J., concur.