**MINI–TAPE, INC., Appellant,**

v.

**Leonard A. FIELDS et al., Appellees.**

**No. 1793.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

May 17, 1978.

.

Sheldon E. Richie, Philip P. Sudan, Jr., Richie, Greenberg & Brackman, Houston, for appellant.

Dan H. Hennigan, Ray J. Keller, Houston, for appellees.

J. CURTISS BROWN, Chief Justice.

This is an appeal from an order temporarily enjoining the appellees from representing that they are the owners or licensees of an exclusive license to manufacture, distribute, license or sell a patented product known as a "mini-tape."

Mini-Tape, Inc. (Mini-Tape or appellant) is the owner of patent rights to a miniature 8-track tape cartridge known as a mini-tape. In 1976, Roger Findley, who was then the president and a director of Mini-Tape, proposed to the members of the Board of Directors of Mini-Tape that he and Leonard A. Fields be authorized to negotiate a license agreement for the manufacture and distribution of mini-tapes and mini-tape accessories. Findley and Fields were successful in negotiating a license agreement, and, on February 15, 1977, Dr. Ronald P. Sibson was granted the exclusive world-wide license to manufacture, sell and distribute mini-tapes and mini-tape accessories. In return, Dr. Sibson paid $52,000 to Mini-Tape and agreed to pay the additional sum of $48,000 by April 30, 1977. On the day following the execution of the license agreement, Dr. Sibson assigned the exclusive license to Trinity International Corporation (Trinity). Leonard Fields is the president of Trinity. Trinity failed to pay the $48,000 which was due on April 30, 1977 and continues to refuse to do so. Trinity contends that its obligation to pay the $48,000 terminated because Mini-Tape breached the license agreement in two respects: (1) the trade name "Mini-Tape," which Mini-Tape sold to Trinity, allegedly had been registered previously to another company; and (2) the mini-tapes allegedly failed to function properly. Following Trinity's failure to pay the $48,000, Mini-Tape instituted this lawsuit against Trinity, Fields and Findley, asserting that they conspired to negotiate the exclusive license agreement at an excessively low price and that Trinity breached the agreement by failing to pay the $48,000, by failing to submit quarterly accountings to Mini-Tape, and by failing to make quarterly royalty payments to Mini-Tape. On October 31, 1977, the trial court temporarily enjoined Trinity and Fields (the appellees) from directly or indirectly holding themselves out as being the owners or licensees of an *exclusive* license for the mini-tape system and from any further licensing of the mini-tape system during the pendency of this litigation, from which order the appellant brings this appeal.

The appellant contends, in his two points of error, that the trial court erred in failing to enjoin the appellees from exercising a *nonexclusive* license to manufacture, distribute or sell mini-tapes and mini-tape accessories. The function of a temporary injunction is to preserve the status quo pending final litigation of a controversy. *Story v. Story,* 142 Tex. 212, 176 S.W.2d 925, 927 (1944). In order to establish his right to the issuance of a temporary injunction, the claimant need only establish a "probable right" and "probable injury"; he need not show that he will ultimately prevail in the litigation. *Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953). The trial court is endowed with broad discretion in determining whether to grant a temporary injunction, and its decision will be reversed only if the court clearly abused its discretion. *Id.*

The trial court did not abuse its discretion by failing to enjoin the appellees from exercising a nonexclusive license to manufacture, distribute or sell mini-tapes. The exclusive license agreement between the appellant and the appellees provides, in pertinent part:

*If Licensee shall violate this agreement in any fashion,* including but not limited

to the failure to pay royalties as herein prescribed or failure to comply with production standards as herein set out, then in such event, *Licensor shall have the option to cancel the exclusive provisions of this agreement,* provided however that Licensee may continue to manufacture and distribute Mini-Tape products to those customers it serves at time of default, under [the] terms hereof *and all of the contractual terms hereunder shall remain in full force and effect except for those parts of the contract concerned with exclusivity of rights of Licensee.* If desired, Licensee, after being deemed to be in default, may choose to cancel all of the terms of this contract and thereafter, shall not, directly or indirectly involve itself in the manufacturing or distributing of Mini-Tape products unless same shall be under a new contract executed as between Licensor and Licensee.

(Emphasis added). The license agreement clearly gives the appellees an *exclusive* license to manufacture and distribute mini-tapes to the customers it had at the time of default. Whether the appellant and the appellees share the *nonexclusive* right to manufacture and distribute mini-tapes to all other customers is a question more appropriately addressed in a trial on the merits. · The appellant's points of error are overruled.

 The appellees argue, by way of cross points, that the trial court abused its discretion in granting the temporary injunction because the appellant has an adequate remedy at law in the form of money damages for the appellees' alleged breach of the license agreement. We reject that argument. The trial court does not abuse its discretion when it grants a temporary injunction if the petition alleges a cause of action and there is some evidence that "tends to sustain it." *Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953). Although conflicting evidence was presented in the hearing on the temporary injunction, there was some evidence tending to show that the appellees breached the license agreement. The mini-tape concept is new and its introduction on the market has met with some resistance and skepticism from record and tape companies. If Trinity represents itself as having the exclusive license to manufacture, sell and distribute mini-tapes when, in fact, it may not, Mini-Tape's chances of marketing the tapes in the music recording industry in the future might be irreparably damaged. The trial court did not abuse its discretion in granting the temporary injunction.

We note, in conclusion, that this appeal appears to have been unnecessary. As Chief Justice Guittard observed in *Irving Bank & Trust Co. v. Second Land Corp.,* 544 S.W.2d 684 (Tex.Civ.App.—Dallas 1976, writ ref'd n. r. e.),

> [w]e see no reason why the case could not have been prosecuted to final judgment in less time than that required by this interlocutory appeal, which decides nothing except whether the status quo should be preserved pending trial on the merits. A hearing on an application for temporary injunction does not serve the same purpose as the hearing on the merits, nor should an appeal from a preliminary order be used to obtain an advance ruling on the merits. The most expeditious way of obviating the hardship of an unfavorable preliminary order is to try the case on the merits and thus secure a hearing in which both facts and law may be fully developed, and then both trial and appellate courts can render judgment finally disposing of the controversy.

544 S.W.2d at 689.

The appellant's points of error and the appellees' cross points having been fully considered and overruled, the order of the trial court granting the temporary injunction is affirmed.

Affirmed.