Reversed and Opinion filed December 5, 2002









Reversed
and Opinion filed December 5, 2002.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00181-CV

____________

 

DENNIS KAUFMANN and KIM KAUFMANN,
INDIVIDUALLY,

AND AS NEXT FRIENDS
OF DREW KAUFMANN, A MINOR,
Appellants

 

V.

 

VERONICA MORALES and ROBERT MORALES,
INDIVIDUALLY,

AND AS NEXT FRIENDS
OF ROYCE MORALES, A MINOR,
Appellees

 



 

On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 01-CV-0888

 



 

O P I N I O N

Appellants, Dennis and Kim Kaufmann, individually, and as
next friends of Drew Kaufmann, bring this interlocutory appeal of the trial
court=s temporary injunction order.  The temporary injunction enjoined the
Kaufmanns from further liquidating assets.  We conclude the trial court abused its
discretion and declare the order void for failing to contain a trial date for
the permanent injunction.








FACTUAL AND PROCEDURAL BACKGROUND

Veronica and Robert Morales, individually, and as next
friends of Royce Morales, brought suit against the Kaufmanns as a result of an
injury Royce suffered while playing with the Kaufmanns= son.[1]  Shortly after receiving notice of the Morales= intent to sue, the Kaufmanns built
an addition to their house.  Fearing that
the Kaufmanns were attempting to make themselves judgment proof, the Moraleses
initiated temporary injunction proceedings to prevent liquidation of
assets.  This accelerated interlocutory
appeal is from the temporary injunction order in which the trial court imposed
restrictions on the Kaufmanns= use of their assets. 

STANDARD OF REVIEW

To obtain injunctive relief, a party must show (1) a harmful
act, (2) imminent, irreparable harm, and (3) no adequate remedy at law.  See Jim Rutherford Invs., Inc. v. Terramar
Beach Cmty. Assoc., 25 S.W.3d 845, 849 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  A trial judge has broad
discretion in deciding whether to grant or deny temporary injunctions, and the
standard of review is a clear abuse of discretion.  See Liberty Mut. Co. v. Mustang Tractor
& Equip. Co., 812 S.W.2d 663, 666 (Tex. App.CHouston [14th Dist.] 1991, no
writ).  The trial court abuses its
discretion when “the law is misapplied to established facts, or when the
evidence does not reasonably support the conclusion that the applicant has a
probable right of recovery.”  State v.
Southwestern Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).  Additionally, the temporary injunction order
entered by the trial court must comply with Rule 683 of the Texas Rules of
Civil Procedure.  Orders are strictly
construed to ensure that they comply with the letter of the rule.  See Interfirst Bank San Felipe v. Paz
Constr. Co., 715 S.W.2d 640, 641 (Tex. 1986).




DISCUSSION

The Kaufmanns raise four issues on appeal.  First, they argue that the order improperly
restrains construction of their home because Texas protects additions to
homesteads.  Second, under the Uniform
Fraudulent Transfer Act (“UFTA”), the Kaufmanns argue a judgment must be
rendered before a trial court can issue a temporary injunction.  See Tex.
Bus. & Com. Code Ann. ' 24.001.  Third, they contend the temporary injunction
in this case is overly broad.  Finally,
the Kaufmanns argue that the injunction is void as a result of a failure to
comply with Rule 683.  We will address
only the last three issues; the first issue is moot because the Kaufmanns have
completed the addition to their home.

I.          Unliquidated
Claim under the UFTA

The Kaufmanns claim that there are two reasons the trial
court erred in entering a temporary injunction based on the UFTA.  First, the Kaufmanns argue the Moraleses
cannot and did not establish a fraudulent transfer under the Act.  Second, the Kaufmanns argue that a temporary
injunction is improper because the claim is unliquidated.  We consider only the sufficiency claim
because it disposes of this issue, rendering the second complaint moot.  

A transfer is fraudulent as to future creditors if it is made
with “actual intent to hinder, delay, or defraud any creditor of the debtor” or
if the transfer is made “without receiving a reasonably equivalent value in
exchange for the transfer or obligation.” 
Tex. Bus. & Com. Code Ann.
' 24.005(a)(1)B(2). 
The purpose of the UFTA is to “prevent fraudulent transfers of property
by a debtor who intends to defraud creditors by placing assets beyond their
reach.”  Tel. Equip. Network, Inc. v.
TA/Westchase Place, Ltd., 80 S.W.3d 601, 607 (Tex. App.CHouston [1st Dist.] 2002, no pet.).








The Kaufmanns cashed two certificates of deposit and built an
addition to their homeCsomething they testified they had been planning since they
purchased the home; the addition was a work/storage area for Mr. Kaufmanns= appliance-repair business.  They took the remaining proceeds and paid
other creditors, such as their children=s school.  These actions do not clearly fall under
section 24.005(a).  There was no “transfer”
of the assets as contemplated by the Code and no showing that the Kaufmanns did
not receive a reasonably equivalent value in exchange for the transfer.  In fact, it overstrains the confines of this
section to try to apply it here.

The Code provides guidance when a court is determining if a
transaction is fraudulent. To show intent to defraud, the Texas Business and
Commerce Code lists eleven factors to consider, including the following:

(1) the transfer or obligation was to an insider; (2)
the debtor retained possession or control of the property transferred after the
transfer; (3) the transfer or obligation was concealed; (4) before the transfer
was made or obligation was incurred, the debtor had been sued or threatened
with suit; (5) the transfer was of substantially all the debtor=s assets; (6) the debtor absconded; (7) the debtor
removed or concealed assets; (8) the value of the consideration received by the
debtor was reasonably equivalent to the value of the asset transferred or the
amount of the obligation incurred; (9) the debtor was insolvent or became
insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt
was incurred; and (11) the debtor transferred the essential assets of the
business to a lienor who transferred the assets to an insider of the debtor.  

See Tex. Bus. & Com. Code Ann.
' 24.005(b)(1)B(11).  

None of the eleven factors listed in the Code apply
here.  To begin with, the parties have
cited us no cases in which a court held that cashing a certificate of deposit
constituted a transfer.  We also have
found none.  But, even if it did qualify
as a transfer, the other factors either do not apply or insufficient evidence
was submitted for us to tell if they apply.

The first factor requires a transfer made or obligation
incurred to an insider.  As we noted,
there was no transfer to a third party. 
The Kaufmanns cashed their own certificate of deposit and used the money
to build an addition to their home. 








The second factor is irrelevant because it assumes a transfer
was made to a third party but that the debtor retained control.  The third factor inquires into whether the
transfer was concealed.  Again, this is
irrelevant; the Kaufmanns cashed their own certificates of deposit.  They did not tell the Morales about it, but
they were not required to.

For the fourth factor to apply, a transfer must be made and a
lawsuit filed.  Although a lawsuit was
filed, no asset was transferred to a third party.  Factors two and three do not apply because
they presume a transfer to a third party. 
The fifth factor asks if the transfer involved substantially all of the
debtor=s assets.  This record does not answer this question
because no evidence was presented on this factor.  The sixth factor is irrelevant because the
Kaufmanns clearly did not abscond.  The
seventh factor is rather inconclusive. 
The Kaufmanns did cash (remove) their certificates of deposit from the
bank.  The eighth factorCwhich involves sales of the assets or
obligations incurredCdoes not apply here. 
We also cannot apply the ninth factor, which asks about the debtors= solvency, because no evidence was
introduced regarding the Kaufmanns= financial solvency or
insolvency.  The tenth factor asks if the
transfer was made after a substantial debt was incurred.  Here, no debt exists yet.  In fact, when this injunction was entered, it
was unclear which playmate actually injured the Morales=s son or whether the Morales=s son was partly to blame.  The eleventh factor, which involves a
transfer by the debtor to a third party who then transfers to an insider, does
not apply.  








The typical fraudulent transfer cases have underlying
elements of purposeful avoidance of creditors or feigned relinquishment of
assets that are absent here.  In Jackson
Law Office, P.C. v. Chappell, the appellant transferred a home, proceeds,
and a second lien to her mother and boyfriend to protect appellant=s assets from going to attorney=s fees.  37 S.W.3d 15, 27B28 (Tex. App.CTyler 2000, pet. denied).  In Coleman Cattle Co., Inc. v. Carpentier,
the court found as a matter of law that when appellant transferred property
into his various corporations, it was to avoid paying a judgment and thus the
transfer was deemed fraudulent.  10
S.W.3d 430, 433B34 (Tex. App.CBeaumont 2000, no pet.).  
Finally, in Radney v. Clear Lake Forest Cmty. Ass=n, Inc., appellant sold his home, which had
injunctions and a suit pending against it, to an international
corporation.  681 S.W.2d 191, 197 (Tex.
App.CHouston [14th Dist.] 1984, writ ref=d n.r.e.).  The jury found appellant=s actions were intended to hinder the
creditor receiving payment.  See
id.  Unlike these cases, the
Moraleses did not establish the Kaufmanns= activity was a fraudulent transfer.

In short, this record and these facts do not support the
trial court=s conclusion that sections 24.005(a)
and (b) apply to this case.  We sustain
this issue.

III.       Overly
Broad Temporary Injunction

In the Kaufmanns= third issue, they correctly argue
the trial court abused its discretion by entering an overly broad temporary
injunction.  

We agree that the injunction is
overly broad because it improperly restrains the Kaufmanns= legal rights.[2]  A temporary injunction is an extraordinary
remedy and should be carefully regulated. 
See Camp v. Shannon, 348 S.W.2d 517, 519 (Tex. 1961).  The temporary injunction should be specific
enough to inform the defendants of the acts they are refrained from doing, but
not so broad as to “prohibit the enjoyment of lawful rights.”  Kulkarni v. Braeburn Valley W. Civic Ass=n, Inc., 880 S.W.2d 277, 278 (Tex. App.CHouston [14th Dist.] 1994, no writ). 

The order below provided the following:








It is therefore, ORDERED, ADJUDGED and DECREED that
Plaintiff=s Amended Application for Injunctive Relief and
Temporary Injunction be GRANTED, and that Defendants Dennis Kaufmann and Kim
Kaufmann are commanded forthwith to desist and refrain from continuing
construction of the addition to their homestead . . . and from selling,
transferring, donating, or in any way disposing of any assets, including but
not limited to cash, certificates of deposit, money markets, stocks, bonds,
mutual funds, securities of any kind, personal property, and real property (including
[a rental property] and Defendant Dennis Kaufmann=s
one-half interest in his father=s house in Texas City, Texas, except Defendants shall
be permitted to use cash on hand as well as personal income as is necessary to
pay for the necessities of life, including food and clothing, attorney=s fees incurred in this matter, and such expenses and
obligations incurred prior to March 5, 2001, including but not limited to
taxes, mortgage payments, credit card bills for items purchased prior to March 5,
2001, utility bills, insurance premiums, loan obligations, and other bills for
items and debts incurred prior to March 5, 2001.  Defendants are only permitted to pay the
monthly premium required on such credit card or loan payments.  

 

It is further ORDERED that Dennis and Kim Kaufmann be
permitted to pay for their children=s
tuition, Kim Kaufmann=s tuition, and tithe at the church of their choice up
to $100.00 per month.

 

This injunction order improperly
restricted the Kaufmanns= legal rights in several ways.  This injunction has stripped the Kaufmanns of
their legal right to pay creditors in the order they choose.[3]  The injunction states that the Kaufmanns
cannot pay off any credit card balances after March 5, 2001.  Instead, the Kaufmanns are allowed to pay
only the monthly required minimum.[4]  The order also limited the amount of money
the Kaufmanns can give to a church without any evidence in the record of the
past tithing habits of the Kaufmanns. 

This temporary injunction clearly
does more than prevent the possibility of the Kaufmanns making fraudulent
transfers; it restrains the Kaufmanns from enjoying many of their legal
rights.  We find the temporary injunction
overly broad because it attempts to freeze assets and legal rights of the
Kaufmanns that are unrelated to the claim.

IV.       Setting
the Cause for Trial

Finally, the Kaufmanns contend the
order is void as a result of the absence of a trial setting.  We agree.








Rule 683 of the Texas Rules of Civil
Procedure provides, “[e]very order granting a temporary injunction shall
include an order setting the cause for trial on the merits with respect to the
ultimate relief sought.”  This provision
is mandatory; a failure to include a trial setting is grounds for voiding the
injunction.  See Interfirst Bank San
Felipe, 715 S.W.2d at 641.  Even if
the Kaufmanns had not raised this point of error, we would be required to void
the order.  See Greathouse Ins.
Agency, Inc. v. Tropical Invs., Inc., 718 S.W.2d 821, 822 (Tex. App.CHouston [14th Dist.] 1986, no writ).

The Moraleses claim that this
requirement is met because the docket sheet, signed almost two months after the
order, sets the trial for the “first jury trial period in February 2003 at 9:00
a.m.”  But including a general date on a
docket sheet does not meet the requirements or the purpose of Rule 683.  See Wyatt v. Cowley, 74 S.W.3d 576,
577 (Tex. App.CCorpus Christi 2002, pet. dism=d w.o.j.).

There are at least two reasons for
requiring a trial date on the order.  One
is to prevent the injunction from becoming permanent.  See Eastern Energy v. SBY P=ship, 750 S.W.2d 5, 6 (Tex. App.CHouston [1st Dist.] 1988, no
writ).  Although a docket sheet notation
arguably might meet this particular purpose (an issue we do not reach), it does
not meet a second, more specific, purpose of the rule.  That purpose is that every order must be
specific and not “reference to the complaint or other document.”   Tex. R. Civ. P. 683.  The order must be complete on its face.  It is important for trial judges or parties
to read the original order and have before them all information relevant to the
injunction.  A vague date on a docket
sheet, a completely separate document, is not sufficient to meet this purpose.[5]  








In conclusion, the trial court
committed reversible error when it applied the Uniform Fraudulent Transfer Act,
and entered an overly broad injunction that improperly restrained the Kaufmanns= legal rights.  In addition, the temporary injunction is void
because it contains no trial date; we order the injunction dissolved.

 

 

/s/        Wanda
McKee Fowler

Justice

 

 

 

 

Judgment rendered and Opinion filed
December 5, 2002

Panel consists of Chief Justice
Brister, Justices Hudson and Fowler.

Publish C Tex.
R. App. P. 47.3(b).

 

 











[1]  Royce
apparently lost sight in one of his eyes. 
The injury appears to have been caused by a bow and arrow set owned by
the Kaufmanns= son; however, the temporary injunction hearing
contains very little information about the incident.





[2]  The Moraleses
also contend the Kaufmanns did not raise the argument at trial that the
temporary injunction was overly broad. 
However, a party does not waive its complaint to an overly broad
temporary injunction at the temporary injunction hearing.  The responsibility of the appeals court is to
review the limited question Aof whether the trial court abused its discretion@ by denying or granting the motion.  See Henke v. Peoples State Bank of
Hallettsville, 6 S.W.3d 717, 720 (Tex. App.CCorpus
Christi 1999, pet. dism=d w.o.j.).





[3]  AIn
the absence of a law declaring preferences invalid, every debtor has the legal
right to pay one or more of his debts with any money or property he has.@  Adams v. Williams, 248 S.W. 673, 676
(Tex. 1923).





[4]  We assume the
trial court intended the Kaufmanns could only pay the monthly minimum, though
it stated Amonthly premium.@





[5]  A footnote
from a recent case discussed the definition of Asetting
the cause for trial.@  It provided
that ARule 683 does not expressly require that a trial date
be set.  Rather, it simply provides
that the injunction order set the cause for trial on the merits.@  EOG Res.,
Inc. v. Gutierrez, 75 S.W.3d 50, 53 (Tex. App.CSan Antonio 2002, no pet.).  According to EOG Res., Inc., a few
courts have required a specific trial date in the order.  Id. 
The court then looked at the definition of Asetting down@ a trial
date in Black=s Law Dictionary that provided A>[t]o Aset down@ a cause
for trial or hearing at a given term is to enter its title in the calendar,
list, or docket of causes which are to be brought on at that term.=@ Id. (citing
Black=s Law Dictionary 955 (Abridged 6th Ed. 1991)).  Therefore, Rule 683 Aimplicitly requires the injunction to order the cause
be calendared on the trial court=s
docket.@  Id.